UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ADELSON ERNESTO CARTAGENA JACO,

Petitioner,

-v-

TODD BLANCHE, *et al.*,

Respondents.

26-CV-04798 (JPO)

OPINION AND ORDER

---

J. PAUL OETKEN, District Judge:

Petitioner Adelson Ernesto Cartagena Jaco, a thirty-six-year-old citizen and native of El Salvador, was detained by Immigration and Customs Enforcement ("ICE") on May 19, 2026. (ECF No. 1 ("Pet.") ¶¶ 9, 12.)  On June 5, 2026, Cartagena Jaco filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, seeking release from ICE custody.  (*See generally id*.)

Cartagena Jaco does not dispute Respondents' contention that he received a final removal order in 2008.  (*See* ECF No. 13 at 7.)  Indeed, Cartagena Jaco does not dispute that he *could* be properly arrested and detained pursuant to 8 U.S.C. § 1231, a statutory provision that requires temporary detention of noncitizens who are subject to a final order of removal.  Instead, Cartagena Jaco argues that Respondents did not take the steps necessary to ensure that this arrest and detention were lawful.  (*See generally id.*)

Based on the papers submitted by the parties and the conference held on June 17, 2026, the Court is compelled to agree.  On this record, Cartagena Jaco has established by a preponderance of the evidence that Respondents lacked a lawful basis for his arrest and detention at the time those actions occurred.  *Zhu v. Genalo*, 798 F. Supp. 3d 400, 405 (S.D.N.Y. 2025) (concluding that a petitioner bears the burden of proving that he is being held contrary to law).

1

I.    **Background**

Cartagena Jaco is a citizen and native of El Salvador.  (ECF No. 6 ("O'Donohue Decl.")

¶ 3.)  He entered the United States on May 27, 2008, and was removed to El Salvador pursuant to

an order for expedited removal on July 9, 2008.  (*Id.* ¶¶ 4-6.)

At an unknown time and place, Cartagena Jaco reentered the United States.  (*Id.* ¶ 7.)  On

May 11, 2026, ICE agents were alerted of Cartagena Jaco's recent arrest for Driving While

Intoxicated, in violation of New York Vehicle and Traffic Law ("NY VTL") § 1192(3), and for

other vehicle-related violations.  (*Id.* ¶¶ 9-10.)  According to Michael O'Donohue, an ICE

Deportation Officer who was not present at the scene but who "review[ed] . . . ICE records [and]

consult[ed] with [his] colleagues," those agents ran database checks and confirmed that

Cartagena Jaco had been previously removed from the United States.  (*Id.* ¶¶ 2, 10.)  As a result,

ICE issued a Warrant of Removal/Deportation, Form I-205 for Cartagena Jaco on May 11, 2026.

(ECF No. 7-5.)  On May 16, 2026, ICE issued a second Warrant of Removal/Deportation Form

I-205 for Cartagena Jaco, signed by the same ICE field office director as the May 11, 2026

warrant and containing the same information.[1]  (ECF No. 7-6.)  Both warrants state that

Cartagena Jaco is subject to removal/deportation from the United States, based upon a final order

of removal by a designated official and pursuant to § 241(a)(5) of the Immigration and

Nationality Act.  (ECF Nos. 7-5, 7-6.)

On May 19, 2026, ICE conducted surveillance involving Cartagena Jaco as the target of

an enforcement operation.  (O'Donohue Decl. ¶ 12.)  During surveillance, officers observed

Cartagena Jaco and approached his vehicle.  (*Id.*)  After confirming Cartagena Jaco's name and

---

[1] Because these warrants are identical, this order relies on the May 16, 2026 warrant, as the most
recent warrant issued.

date of birth, ICE arrested him pursuant to the Form I-205 Warrant and transported him to an ICE holding room for processing. (*Id.*) At some point on that same day, Acting Supervising Detention and Deportation Officer Michael Damiano issued a Notice of Intent/Decision to Reinstate Prior Order, Form I-871 (the "Form I-871"). (ECF No. 7-8.) Forms I-871 contain two sections: (1) a section providing notice as to the Secretary of Homeland Security's intent to reinstate the order of removal ("Notice of Intent to Reinstate"), and (2) a section providing notice as to an actual determination that the noncitizen is subject to removal through reinstatement of a prior order ("Notice of Decision to Reinstate"). (*See id.* at 2.) Damiano completed only the Notice of Intent to Reinstate section on the Form I-871, and not the Notice of Decision to Reinstate section. (*Id.* at 2.) Moreover, the Reinstatement Notice is not signed by Cartagena Jaco and is stamped "REFUSED TO SIGN." (*Id.* at 2.) O'Donohue provides that Cartagena Jaco was served with the incomplete Form I-871 on May 19, 2026. (O'Donohue Decl. ¶ 12.)

Finally, on June 10, 2026, "after realizing that officers completed only the Notice of Intent to Reinstate [Cartagena Jaco's] Prior Order on the Form I-871, ICE completed the Form I-871 Notice of Decision to Reinstate Prior Order, thereby reinstating [Cartagena Jaco's] prior 2008 removal order." (*Id.* ¶ 17.) The now-completed Form I-871 (the "Final Reinstatement Notice") (ECF No. 7-10) was allegedly served on Cartagena Jaco five days after Cartagena Jaco's habeas petition was filed, twenty-two days after his arrest and detention, and twenty-five days after the issuance of the most recent warrant. (O'Donohue Decl. ¶ 17; *see also* Pet. ¶ 12; ECF No. 7-6.)

## II.     Legal Framework

### A.     Statutory Framework

Where a noncitizen is found to have reentered the United States unlawfully after having been removed pursuant to an order of removal, "the prior order of removal is reinstated from its

3

original date and is not subject to being reopened or reviewed," and the noncitizen "shall be removed under the prior order at any time after the reentry." 8 U.S.C. § 1231(a)(5). Under 8 U.S.C. § 1231 of the Immigration and Nationality Act (the "INA"), removal is typically required to occur within 90 days of the issuance of an order of removal (the "removal period"), and detention is mandatory for the duration of the removal period. *Id.* §§ 1231(a)(1)(A), (a)(2)(A). Because Cartagena Jaco was detained on May 19, 2026, the 90-day removal period will not expire until August 17, 2026.

Cartagena Jaco does not challenge the *length* of his detention. Instead, he argues that his arrest and detention pursuant to § 1231 are impermissible because there was no valid reinstatement of his prior order of removal before the issuance of the Form I-205 Warrant, before his arrest and detention, and before the filing of his habeas petition. (*See* ECF No. 13 at 4.) Section 1231 "does not codify a step-by-step procedure for reinstating a removal order," but "[t]he Second Circuit has held . . . that the Attorney General may implement the . . . reinstatement provision pursuant to the implementing regulations articulated in 8 C.F.R. Section 241.8." *Martinez v. McAleenan*, 385 F. Supp. 3d 349, 358-59 (S.D.N.Y. 2019) (citing *Garcia-Villeda v. Mukasey*, 531 F.3d 141, 149 (2d Cir. 2008)). 8 C.F.R. § 241.8, in turn, provides that an immigration officer must determine the following before concluding that a noncitizen is subject to reinstatement of a removal order: (1) whether the noncitizen "has been subject to a prior order of removal"; (2) the identity of the noncitizen, *i.e.*, whether he is in fact the noncitizen who was previously removed (and, in disputed cases, identification shall include fingerprint comparisons); and (3) whether the noncitizen unlawfully reentered the United States, a determination that requires the officer to "consider all relevant evidence," including statements made by the noncitizen and any evidence in his possession. 8 C.F.R. § 241.8(a).

4

If the officer determines that the noncitizen is subject to removal, the officer shall provide the noncitizen with written notice of that determination and advise the noncitizen that he may make a written or oral statement contesting the determination. *Id.* § 241.8(b). The officer is then required to consider whether the statement warrants reconsideration of the determination. *Id.* Once an immigration officer has established that the requirements of § 241.8(a) are met, the officer must order the noncitizen removed under the previous removal order. *See Amos v. Holder*, 358 F. App'x 261, 263 (2d Cir. 2009) (summary order).

**B.      Due Process under the Fifth Amendment**

The Due Process Clause of the Fifth Amendment provides that "[n]o person . . . shall be deprived of life, liberty, or property without due process of law." U.S. Const. amend. V. "[T]he Fifth Amendment entitles noncitizens to due process of law . . . whether their presence here is lawful, unlawful, temporary, or permanent." *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020). "The Supreme Court has been unambiguous that executive detention orders, which occur without the procedural protections required in courts of law, call for the most searching review." *Id.*

To satisfy due process, the procedures afforded must be "appropriate to the nature of the case *before* the termination [of a constitutionally protected interest] becomes effective." *Bell v. Burson*, 402 U.S. 535, 542 (1971) (cleaned up) (emphasis added); *see also Nevarez Jurado v. Freden*, 813 F. Supp. 3d 376, 388 n.8 (W.D.N.Y. 2025). In the reinstatement context, Congress determined that the procedures set out in § 241.8 serve as the procedural floor below which the government may not go. *See Garcia-Villeda*, 531 F.3d at 149 (describing § 241.8's requirements as important "procedural safeguards"). Those safeguards, including confirming the noncitizen's identity, prior removal, and unlawful reentry, and providing written notice with an opportunity to contest, are the mechanism by which due process is satisfied.

Absent such safeguards, ICE would be able to detain noncitizens under § 1231 "with no process at all, much less prior notice." *Valdez v. Joyce*, 803 F. Supp. 3d 213, 219 (S.D.N.Y. 2025). Under such circumstances, failure to comply with 8 C.F.R. § 241.8 would not merely constitute a regulatory violation, but also a denial of the process required by the Fifth Amendment. *See Chipantiza-Sisalema v. Francis*, No. 25-CV-5528, 2025 WL 1927931, at *3 (S.D.N.Y. July 13, 2025); *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 491, 495-96 (S.D.N.Y. 2025).

## III.    Discussion

Respondents argue that Cartagena Jaco is properly detained pursuant to § 1231(a), and therefore his habeas petition must be denied. (*See* ECF No. 8 at 12-16.) The Court disagrees.

### A.    ICE's Arrest and Detention of Cartagena Jaco

It is clear from the record that ICE did not reinstate Cartagena Jaco's prior removal order before or even at the time of his detention. At the time of Cartagena Jaco's arrest, he was served only with a Notice of Intent to Reinstate, not a Notice of Decision to Reinstate. (*See* O'Donohue Decl. ¶ 12; ECF No. 7-8.) It was not until June 10, 2026, five days after the filing of this petition, that Respondents finally completed the Notice of Decision to Reinstate (ECF No. 7-10), which O'Donohue attests was served on Cartagena Joca that same day (O'Donohue Decl. ¶ 17). There is no indication that Cartagena Jaco's prior order of removal had been reinstated, or that he was given notice of such reinstatement, any time before June 10, 2026. Respondents contend that ICE arrested Cartagena Jaco only after database checks confirmed his prior removal and unlawful status. (ECF No. 8 at 13; O'Donohue Decl. ¶ 10.) However, the absence of a contemporaneous Notice of Decision to Reinstate undermines any suggestion that reinstatement occurred prior to arrest. Moreover, Respondents rely entirely on a single declaration from O'Donohue, who was not involved in the purported determination, to buttress their contention.

But O'Donohue's declaration is "hearsay from a removed third party," and it cannot substitute for competent evidence such as a completed Form I-871 Notice of Decision to Reinstate. *Martinez*, 385 F. Supp. 3d at 361.

Given these procedural defects, Cartagena Jaco was not provided timely "written notice of [an officer's] determination" that he was subject to removal under a reinstated removal order, as required by regulation. 8 C.F.R. § 241.(8)(b). The lack of notice not only violates § 241.8(b). As courts in this district have concluded, the failure to serve a completed and valid reinstatement of a prior order of removal at the time of a petitioner's arrest is a due process violation. *See Martinez*, 385 F. Supp. 3d at 361-62 (granting release given a lack of evidence that the petitioner was properly served an order of reinstatement at the time of his arrest); *see also Funes v. Francis*, 810 F. Supp. 3d 472, 499 (S.D.N.Y. 2025) (concluding that ICE's failure to follow proper procedures, including providing notice of the revocation of an Order of Supervised Release, was a due process violation). Respondents themselves seem to recognize that Cartagena Joca was owed a Notice of Decision to Reinstate, as they served him with the Final Reinstatement Notice after this lawsuit was filed.

Moreover, the fact that no reinstatement had been issued before Cartagena Joca's arrest renders the purported basis for his arrest and detention invalid. Indeed, the Form I-205 Warrant cites as its predicate a final order of removal issued pursuant to Section 241(a)(5) of the Immigration and Nationality Act, which is codified at 8 U.S.C § 1231. (ECF No. 7-6.) But at the time that the I-205 Warrant was issued, and at the time that Cartagena Joca was initially detained, no reinstatement decision pursuant to § 1231 had been made. Therefore, Respondents have not shown that the warrant rested on a valid legal and procedural foundation, and the warrant itself cannot serve as evidence of a lawful arrest and detention. Ruling otherwise would

7

allow ICE to arrest individuals merely on suspicion of unlawful presence, then seek statutory confirmation of that determination after the fact.

Proper reinstatement of a final order of removal requires ICE officers to make certain determinations required by § 241.8(a) and to give notice of reinstatement as required by § 241.8(b). Those requirements are not mere formalities. They are necessary "procedural safeguards," *Garcia-Villeda*, 531 F.3d at 149, to ensure that ICE has done its due diligence before placing a noncitizen under mandatory detention pursuant to § 1231. These protections are important in the reinstatement context, where reinstatement can be effected by an agency officer rather than a judicial officer and without a hearing. *See id.* "[T]he Supreme Court has recognized that '[w]here the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures.'" *Diallo v. Joyce*, No. 25-CV-9909, 2025 WL 3718477, at *5 (S.D.N.Y. Dec. 23, 2025) (quoting *Morton v. Ruiz*, 415 U.S. 199, 235 (1974)). "'[T]he notion of fair play animating the Fifth Amendment precludes an agency from promulgating a regulation affecting individual liberty or interest, which the rule-maker may then with impunity ignore or disregard as it sees fit.'" *Id.* (quoting *Montilla v. I.N.S.*, 926 F.2d 162, 164 (2d Cir. 1991)) (alterations adopted). Accordingly, Respondents' failure to follow the government's own procedures not only contravenes agency regulation but also violates due process.

Finally, Respondents have not contended, nor could they contend on this record, that any factors warranted disregarding the determination and notice requirements of § 1231 and § 241.8. The law provides an alternative, 8 U.S.C. § 1357, under which ICE may detain a noncitizen without a warrant when a person is "likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2); *see Romero v. Noem*, No. 26-CV-01884, 2026 WL 775847, at *2

8

(S.D.N.Y. Mar. 19, 2026).  ICE did not invoke that authority here.  Having chosen to proceed under § 1231 instead, ICE was bound to follow the procedures established under § 1231.

###    B.    Respondents' Post-Hoc Cure Argument

At the conference on June 17, 2026, Respondents argued that any defect at the time of Cartagena Jaco's arrest was cured when, on June 10, 2026, ICE completed and allegedly served the Notice of Decision to Reinstate.  The Court disagrees.  A petitioner's current detention status, "even if it has been converted to a lawful one" is not a "bar to allowing [a court] to exercise an appropriate equitable remedy through the writ." *Martinez*, 385 F. Supp. 3d at 366.  A holding to the contrary would reward the government for completing, after the fact and after litigation commences, the very procedures it was required to follow before making an arrest.  Courts in this district have refused to endorse that approach.  *See, e.g.*, *Sanchez Bermudez v. Noem*, No. 26-CV-678, 2026 WL 363523, at *4 (E.D.N.Y. Feb. 9, 2026) ("ICE's detention of [petitioner] was unlawful from its inception, notwithstanding Respondents' efforts at post-hoc rationalization.").

Having concluded that Cartagena Jaco's arrest and detention were unlawful from the start, the Court turns to remedy.  "[T]he 'typical remedy' for 'unlawful executive detention . . . is, of course, release.'"  *Diallo*, 817 F. Supp. 3d at 210 (quoting *Munaf v. Geren*, 553 U.S. 674, 693 (2008)).  Respondents have offered no basis for departing from that default remedy.[2]  The

---

[2] The authorities cited by Respondents are distinguishable.  In *A.P.A. v. Arteta*, No. 26-CV-3334, 2026 WL 1587452 (S.D.N.Y. Jun. 3, 2026), the court denied the petitioner's request for immediate release based on the government's procedural failures, but that case arose under Section 1226(a), not Section 1231.  Critically, the government there had raised non-frivolous arguments that the petitioner posed a danger to the community, leading the court to remand to the immigration courts for an initial bond determination.  *Id.* at *3-4.  This case is different in a fundamental respect:  Section 1231 mandates detention, leaving no room for procedural error.  Any such error is therefore fatal to Respondents' position.  In *Kuprashvili v. Flanagan*, No. 25-CV-5268, 2026 WL 1067217 (S.D.N.Y. Apr. 20, 2026), the respondents' provision of written notice and an informal interview following initial detention was not in dispute.  *Id.* at *10.  The

June 10, 2026 reinstatement, which was completed after this petition was filed and after Cartagena Jaco had already been held for twenty-two days unlawfully, does not alter the analysis.  The Court therefore orders Cartagena Jaco released.

**IV.     Conclusion**

For the foregoing reasons, Cartagena Jaco's petition for a writ of habeas corpus under 28 U.S.C. § 2241 is GRANTED.

Respondents are hereby ORDERED to release Cartagena Jaco, without electronic monitoring, including but not limited to GPS monitoring, no later than June 23, 2026, at 12:00 PM ET.  Respondents must release Cartagena Jaco with all of his belongings that are in Respondents' possession, including but not limited to identification cards, clothing, and money.  Respondents shall confirm compliance with these directives in a filing on the docket by noon on June 24, 2026.

The Clerk of Court is directed to close the motion at Docket Number 2.

SO ORDERED.

Dated: June 22, 2026
       New York, New York

_____
                J. PAUL OETKEN
            United States District Judge

_____

same cannot be said here.  Cartagena Jaco has not conceded receiving the Final Reinstatement Notice, nor has he admitted to being afforded an opportunity for an informal interview.  Further underscoring this point, the Final Reinstatement Notice bears no signature dated on or after June 10, 2026.  This case is also further distinguishable from those cited by Respondents.  The issue here extends beyond a mere procedural defect in Cartagena Jaco's notice or opportunity to be heard.  It also implicates a substantive defect reflected in the Form I-205 Warrant itself, namely, that there was no lawful basis for Cartagena Jaco's arrest.